## In re VARIETY AT ROOSEVELT, INC., Debtor.

### No. 04–22835–608.

United States Bankruptcy Court, E.D. New York.

Dec. 6, 2004.

Wayne Greenwald, Wayne Greenwald P.C., New York City, for Debtor.

Patrick Collins, Farrell Fritz, P.C., Uniondale, NY, for MCO.

## DECISION

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of MCO ("MCO"), the lessor to Variety at Roosevelt (the "Debtor") under a non-residential lease of real property, for an order requiring the Debtor to pay all post-petition rent under the lease immediately as required by § 365(d)(3) of the Bankruptcy Code.

### Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b), 157(b)(2)(A), (B), and (O) and the Eastern District of New York standing order of reference dated August 28, 1986.

### Facts

The following relevant facts are not in dispute. The Debtor filed a voluntary Chapter 11 petition on September 7, 2004. The Debtor leases premises at 93–22/28 Roosevelt Avenue, Jackson Heights, New York (the "Premises") from MCO pursuant to a lease, dated June 27, 2002 (the "Lease"). There was an amendment to the Lease, dated May 29, 2003, which deleted the requirement that MCO deliver a certificate of occupancy to the Debtor prior to the date upon which rent began to accrue (the "Amendment"). This amendment was entered into because the Debtor desired to take possession of the Property before MCO obtained a certificate of occupancy. The Debtor operates a retail store at the Premises.

On or about June 3, 2004, MCO commenced a summary holdover proceeding

against the Debtor in the Civil Court of the City of New York, County of Queens, Commercial Landlord and Tenant Part, Index No. 65647/04 (the "Eviction Proceeding"). MCO alleges, and the Debtor admits, that the Debtor has not paid rent since May 2004.

In the Debtor's answer in the Eviction Proceeding it asserted three affirmative defenses. The Debtor asserted that MCO: (a) failed to make certain repairs to doors, windows and security gates, (b) failed to obtain a certificate of occupancy for the Premises from the New York City Department of Buildings, and (c) unreasonably refused to consent to an assignment and/or subletting of a part of the Premises. The Debtor filed its bankruptcy petition before a decision could be made by the state court in the Eviction Proceeding.

On October 13, 2004, MCO filed its motion seeking the payment of post-petition rent pursuant to § 365(d)(3) of the Bankruptcy Code. The Debtor argues that it does not owe any back rent to MCO and is not required to pay post-petition rent to MCO because, under state law (as the Debtor interprets it), a commercial tenant need not pay rent to a landlord when the landlord has not obtained a certificate of occupancy for the premises.

## Discussion

Section 558 of the Bankruptcy Code permits a debtor-in-possession to assert any defense available to the debtor as against any entity other than the estate. 11 U.S.C. § 558.

■ With respect to the Debtor's defenses premised upon MCO's alleged failure to repair doors, windows and security gates, and MCO's allegedly unreasonable refusal to consent to the Debtor's sublease of the Premises, the Debtor seeks to set off rent amounts owed by the Debtor. The Debtor takes the position that it does

not owe rent to MCO because MCO has breached certain covenants in the Lease.

The analysis of the Debtor's affirmative defenses must begin with the language of the Lease. Section 64 of the Lease states that:

> It is hereby expressly understood and agreed by and between the parties hereto, that the Tenant herein shall not be entitled to any abatement of rent or rental value or diminution of rent in any dispossess proceeding for the payment of rent by reason of any breach by the Landlord of any covenant contained in this Lease on its part to be performed and in any dispossess proceeding for non-payment of rent, or in any action for rent under this Lease. The Tenant shall not have the right of setoff by way of damages which the Tenant may have sustained by reason of the Landlord's failure to perform any of the terms, covenant or conditions contained in the Lease on its part to be performed, but the said Tenant shall be relegated to an independent action for damages, and such independent action shall not at any time be joined or consolidated with any action to dispossess for non-payment of rent.

This provision means that the Debtor has agreed that it does not have a right to set off any damages claimed as a result of MCO's failure to make repairs or to consent to the Debtor's request to sublease a portion of the Premises against its rent obligations. This provision of the Lease is consistent with New York law. *See Westchester County Indus. Dev. Agency v. Morris Indus. Builders*, 278 A.D.2d 232, 717 N.Y.S.2d 279 (N.Y.App.Div., 2000) (holding that a tenant's duty to continue to pay rent is not suspended, even if the landlord breaches its obligations under the lease, unless there is an express provision

in the lease declaring the circumstances under which the tenant may withhold his rent); *Towers Organization, Inc. v. Glockhurst Corp., N.V.*, 160 A.D.2d 597, 554 N.Y.S.2d 242 (N.Y.App.Div., 1990) (holding that a tenant must continue to pay rent for so long as tenant remains in possession of premises, even if landlord fails to provide essential services). The Debtor's argument that it has a right of setoff because of MCO's failure to make certain repairs or to consent to the Debtor's request to sublease a portion of the Premises must therefore fail. The Debtor's remedy, if any, lies in a separate action against MCO to enforce those provisions of the Lease the Debtor alleges have been breached by MCO.

■ The Debtor's argument that MCO's failure to provide a certificate of occupancy relieves the Debtor of any obligation to pay rent is premised on a different theory. The Debtor asserts that, notwithstanding its agreement to the contrary, it cannot be required to pay rent before MCO obtains a certificate of occupancy for the premises because the purpose of a certificate of occupancy is to promote health and public safety and therefore cannot be waived. The Debtor points to New York City Administrative Code § 27–214(a), which states:

> Except as permitted under the provisions of section 27–218 of this article, no building hereafter constructed shall be occupied or used, in whole or in part, unless and until a certificate of occupancy shall have been issued certifying that such building conforms substantially to the approved plans and the provisions of this code and other applicable laws and regulations.

Citing 22 N.Y. Jur. Contracts § 344 (which states that "a contractor, assuming to build in accordance with the building code or public health law of a municipality, must in

that regard specifically perform, since neither party may waive the provisions of such law"), the Debtor argues that, due to the absence of a certificate of occupancy under New York City Administrative Code § 27–214(a), it is entitled to the remedy prescribed in New York's Multiple Dwelling Law § 302, which, the Debtor asserts, has been applied to commercial tenants as well as residential tenants by New York courts.

The Amendment to the Lease removed the requirement that MCO deliver a certificate of occupancy to the Debtor prior to the Rent Commencement Date (as defined in the Lease). However, the Amendment does not purport to absolve MCO of any obligation to obtain a certificate of occupancy, rather, it removes a covenant by MCO running in favor of the Debtor that required MCO to obtain such a certificate before the Debtor could be required to pay rent under the Lease.

■ The law in New York City with respect to a commercial tenant's duty to pay rent despite the absence of a certificate of occupancy is clear. "By a long series of decisions, the rule has been established that the question whether covenants are to be held dependant or independent of each other is to be determined by the intention of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication." *56–70 58th St. Holding Corp. v. Fedders–Quigan Corp.*, 5 N.Y.2d 557, 563, 159 N.E.2d 150, 154, 186 N.Y.S.2d 583, 589 (N.Y.1959) (*citing Rosenwasser v. Blyn Shoes*, 246 N.Y. 340, 346, 159 N.E. 84 (N.Y.1927)).

Here, the intention of the parties is clear. The Amendment removed the requirement that MCO obtain a certificate of occupancy prior to the commencement of the term of the Lease and the Rent Commencement Date. It is therefore evident

that the Debtor is under an obligation to pay rent to MCO despite the absence of a certificate of occupancy for the Premises. *See 56–70 58th Street Holding Corp.*, 5 N.Y.2d 557, 563, 186 N.Y.S.2d 583, 159 N.E.2d 150 (holding that unless covenant to pay rent is expressly conditioned upon the landlord providing a certificate of occupancy, the commercial tenant must pay rent notwithstanding the lack of a certificate of occupancy even where new occupant's business is of a more dangerous nature); *accord, Silver v. Moe's Pizza, Inc., et al.*, 121 A.D.2d 376, 503 N.Y.S.2d 86 (N.Y.App.Div.1986) (holding on similar facts in a case arising in Dutchess County, "[I]n the case of a commercial lease where the landlord has made no covenant to obtain a certificate of occupancy and the tenant's right to possession is wholly undisturbed, the mere absence of a certificate of occupancy does not relieve the tenant of its fundamental obligation to pay rent ..."); *see also Robitzek Inv. Co. v. Colonial Beacon Oil Co.*, 40 N.Y.S.2d 819, 822–823, 265 A.D. 749, 753 (N.Y.App.Div. 1943); *Raner v. Goldberg*, 155 N.E. 733, 734, 244 N.Y. 438, 441–442 (N.Y.1927).

The Debtor asserts, however, that when a landlord has failed to obtain a certificate of occupancy for leased property, courts have allowed commercial lessees to assert defenses under New York's Multiple Dwelling Law § 302, which prohibits a landlord from collecting rent in the absence of a certificate of occupancy. To support this proposition, the Debtor cites *Elizabeth Broome Realty Corp. v. China Printing Co., Inc.*, 157 Misc.2d 572, 598 N.Y.S.2d 138 (N.Y.C. Civ.N.Y. County 1993). The facts in *Broome*, however, are inapposite. There, the court dealt with a commercial business located in a mixed-use building that contained both residential and commercial space. The landlord in *Broome* had a certificate of occupancy for the residential units; however, the temporary certificate of occupancy that covered the commercial space had expired. *Id.* at 573, 598 N.Y.S.2d 138. The commercial business did not pay rent for the period during which its premises was not covered by a certificate of occupancy. *Id.* The court held that because it was located in a mixed-use building, the commercial business could avail itself of defenses under the Multiple Dwelling Law and, therefore, was not required to pay rent for that portion of time in which there was no certificate of occupancy. *Id.; accord Ying Lung Corporation v. Serina Medrano*, 475 N.Y.S.2d 772, 123 Misc.2d 1074 (N.Y.Misc. 1984) (holding that nonresidential occupants located in mixed-use buildings are entitled to assert defenses under the Multiple Dwelling Law where the landlord has failed to provide a certificate of occupancy).

Section 302 of the Multiple Dwelling Law states that it is applicable to "any dwelling or structure [to] be occupied in whole or in part for human habitation." NY CLS Mult D § 302. A "dwelling" is defined as "any building or structure or portion thereof which is occupied in whole or in part as the home, residence or sleeping place of one or more human beings." NY CLS Mult D § 4. In this case, the Debtor operates a retail business in a shopping mall. There is no contention that the Premises are located in a mixed-use building or otherwise constitutes a "dwelling." The New York Multiple Dwelling Law, therefore, has no application here.

The Debtor's argument that payment of post-petition rent is not required under the Lease or applicable New York law is without merit. The Debtor is directed to remit the post-petition rent arrearages to MCO by December 10, 2004.

MCO is directed to submit an order consistent with this decision.